

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00858-CV

**IN THE INTEREST OF D.M.**, et al., Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01692
Honorable Peter A. Sakai, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed:  May 27, 2015

REVERSED AND RENDERED IN PART; AFFIRMED IN PART

This is an accelerated appeal from the trial court's judgment terminating appellant's parental rights to her four children, C.G., Jr. (age 17), S.M. (age 15), R.M. (age 12), and J.R. (age 10).[1] On appeal, appellant asserts the evidence is insufficient to support a finding that termination is in the children's best interest.  Because we agree, we reverse the judgment terminating

---

[1] C.G., Jr.'s whereabouts were unknown at the time of trial; there was some speculation that he was living with his girlfriend.  The Department asked to dismiss as to C.G., Jr., but the trial court denied the request.  Because C.G., Jr. turned eighteen years old in March 2015, the question of C.G., Jr.'s conservatorship is now moot.  *See* TEX. FAM. CODE ANN. § 101.003 (West 2014) (defining an adult as a person of at least 18 years of age who is not and has not been married); *id.* § 161.206 (West 2014) (effects of termination order); *In re N.J.D.*, No. 04–13–00293–CV, 2014 WL 555915, at *1 (Tex. App.—San Antonio Feb. 12, 2014, pet. denied) (mem. op.).  Appellant is also the parent of D.M., who was 17 years old at the time the Department filed its petition for termination, but was almost 19 years old at the time of trial.  Thus, D.M. was not subject to the trial court's order of termination.

appellant's parental rights and render judgment denying the Department's petition for termination of appellant's parental rights.

## BACKGROUND

Several witnesses testified at the termination hearing on October 31, 2014. Amber Shaw, an investigator employed by the Department of Family and Protective Services ("the Department"), testified that the family was referred in July 2013 for neglectful supervision. The children were reported to have been left home alone; also, appellant was reported to have used marijuana. A drug screen came back positive for cocaine; appellant denied using cocaine and explained that her cousin had given her a painkiller for back pain. In seeking a safety plan for the family, Shaw considered appellant's history with the Department, which dated back several years.[2] Shaw testified that appellant had been referred to family-based services a total of four times and that she had been "validated" for neglectful supervision and physical neglect. Shaw stated that appellant was cooperative during the current investigation.

Psychologist Michelle Moran testified that she performed a psychological evaluation on appellant on June 17, 2014. When asked whether appellant was "functional or dysfunctional as a parent," Moran answered that appellant had made a number of parenting errors and admitted as much. However, "the parenting inventory . . . did not really result in big concerns about the way she handled her children." According to Moran, appellant has a pattern of being "too nice" and yielding to the wishes of others. Although Moran was concerned about appellant's April 2014 positive drug test for marijuana, she did not see appellant as an addict or drug dependent. Moran met appellant on only one occasion, and never saw her interact with her children. Moran believed that family counseling was necessary in order for appellant to be reunified with her children.

---

[2] Shaw used an affidavit that she had prepared for removal in July 2013 to refresh her memory at trial; the affidavit was not admitted into evidence and Shaw testified to no other details from the affidavit than what is elucidated above.

S.M., R.M., and J.R. were placed at St. PJ's Children's Home upon removal from appellant's home and remained there during the pendency of the case, which was over a year. Sarah Almendariz, S.M.'s therapist at St. PJ's, testified that S.M. was diagnosed with an adjustment disorder and takes medication to stabilize her mood and to help with attention deficit hyperactivity disorder. Almendariz stated that S.M. suffered trauma from seeing her younger brothers physically abused by her mother's boyfriend.[3] S.M. loves her mother and wishes to remain with her. Almendariz could not answer whether it was in S.M.'s best interest to remain with her mother because Almendariz did not know appellant's "status." Specifically, Almendariz could not comment on whether appellant was capable of raising her children. Almendariz noted that she would have liked to see appellant and S.M. in family therapy, but that family therapy was not ordered because the Department did not plan for reunification and was requesting termination.

Chelsea Ball Uranga is also a counselor at St. PJ's who worked with R.M. and J.R. She testified that the children had observed drug use and domestic violence and endured physical abuse by their mother's boyfriend in the home. She stated that the children exhibit verbal and physical aggression and have shown improvement since they arrived at St. PJ's. Both boys take medication for mood stabilization and/or regulation. Both boys want to be reunited with their mother. Uranga could not make an assessment as to whether termination would be in the children's best interest because she did not have enough information about appellant's current state. Uranga opined that in order to reunify the family, appellant would need stable housing and income. Uranga also opined that the family would need continued therapy, both individual and family. However, Uranga stated that the children were never enrolled in family therapy because "it was proposed to

---

[3] The allegations of physical abuse were never validated by the Department.

us that termination was going to be what we were going for." Uranga agreed that the children need an answer one way or the other as to termination of parental rights.

Nicole Curel, the Department caseworker supervisor, explained that appellant has participated in family-based services on four previous occasions dating back to 1999 and that, in her opinion, appellant has not changed. Curel testified that although appellant had completed all of the tasks required of her under the service plan, she had not "met the goals" of her service plan, and therefore Curel recommended that appellant's parental rights be terminated. Curel stated that appellant's drug use had not been appropriately addressed and that she tested positive for marijuana in May, methadone in July, and cocaine in August 2014; all three tests occurred after appellant had completed drug treatment. In addition, Curel noted that appellant has a history of being with inappropriate paramours, many of whom used drugs. Appellant also communicated with her children in an inappropriate manner, i.e., cursing. Curel stated that the children have the "possibility" of being adopted if parental rights are terminated. According to Curel, the primary reason the Department was seeking termination of parental rights was so that the children could get "closure" and be able to be adopted.

On cross-examination, Curel admitted that she had supervised only one visit between appellant and the children and conceded that cursing was not a reason to terminate parental rights. Curel also admitted that appellant was joking when she called one of her sons a crude name during the visit. Curel acknowledged that appellant has stable housing and employment, and that she is in drug treatment and has had no positive drug tests since starting treatment for a second time during the pendency of the case.

Appellant testified that she is employed full time as a home care provider. She is currently leasing a three-bedroom house. Appellant is still engaged in counseling, therapy, and drug treatment, and had been sober for 85 days at the time of trial.

Linda Davila, a licensed chemical dependency counselor, who treats appellant at Lifetime Recovery, testified that appellant had not had a single positive drug test during her 85 days in treatment. Davila stated that her counseling addresses relapse prevention, and that appellant is aware she has made mistakes in the past and is working very hard to address them at this time. Davila meets with appellant three times a week for three hours and appellant has not missed any appointments. According to Davila, appellant is better able to handle difficult situations and make better choices at this point. Appellant also has alternatives to drug use and a support system. Davila claimed that appellant is doing everything she can to improve and that she has a sponsor. Davila stated that she is willing to work with appellant as long as necessary. When asked if there was any reason that appellant should not have her children back, Davila replied that she would have no concerns if the children were sent home with their mother and that appellant "has worked very hard to turn it around." Davila further stated that she did not see "any problem" with appellant relapsing.

In closing argument, Maureen Llanas, the children's ad litem, acknowledged that this case is a "really tough one." Llanas acknowledged that appellant had completed all her services. Llanas asked the trial court to reserve its decision regarding termination until the children had a chance to participate in family therapy with their mother and to see whether appellant has really changed.

At the conclusion of the hearing, the trial court terminated appellant's parental rights, stating that "the children need closure." The trial court gave appellant "no credit for the last minute effort" she made and stated, "I just don't trust you." The order of termination was based upon findings that appellant (1) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, and (2) used a controlled substance in a manner that endangered the health or safety of the children, and (a) failed to complete a court-ordered substance abuse treatment program; or (b) after completion of a court-

ordered substance abuse treatment program continued to abuse a controlled substance. TEX. FAM. CODE ANN. § 161.001(1)(O), (P) (West 2014). The order also contained the trial court's finding that termination of the parent-child relationship was in the best interest of the children. *Id.* § 161.001(2).

## BEST INTEREST

A trial court may order termination of the parent-child relationship only if the court finds by clear and convincing evidence one or more statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2); § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). We review the sufficiency of the evidence to support the termination of parental rights under the well-established standards for legal and factual sufficiency of the evidence. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other

family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child.  *Id.* § 263.307(b).

Courts may also apply the non-exhaustive factors enumerated in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976), to shape their analysis.  These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.  *Id.*

Moreover, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality

of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by her past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

## A.    Section 263.307(a) Factors

The children, who were aged 15, 12, and 10 at the time of trial, do not exhibit significant physical and mental vulnerabilities. All three are in therapy and take medication to regulate their mood. Although the Department had been involved with the family since 1999, the children had never been removed from the home prior to July 2013. Prior to July 2013, each time that family-based services were initiated, appellant successfully completed her service plan and the case was closed. There was no evidence of physical harm to the children at the time of removal. The children all wanted to return to their mother's home, and the children's ad litem asked that they be given an opportunity to participate in family counseling with appellant before a decision regarding termination was made. The psychological evaluation conducted on appellant highlighted her past drug use and problems in her previous romantic relationships. Appellant admitted to the drug use and to making poor choices in her personal relationships. Since appellant has engaged in drug counseling with Davila, she has not had a positive drug test and had been sober almost three months at the time of trial. Appellant attends drug counseling several times a week and has not missed any appointments. The psychologist as well as the children's counselors recommended family therapy, but because the Department had apparently determined that it was working towards termination and not reunification, none was arranged. Appellant did not miss any visits with her children. The Department supervisor, Curel, who only observed one visit, opined that appellant's communication with her children was inappropriate because the children played on their social media devices and one child said curse words; also, appellant called one child a crude name. Curel later admitted that appellant was obviously joking when she used the crude term, and that foul

language is not a reason to terminate the parent-child relationship. Curel also believed that appellant communicated with her children in an inappropriate manner because appellant forced her daughter to talk to her new boyfriend, but appellant later clarified that her daughter had asked to speak to her father, not appellant's boyfriend. Finally, appellant testified that in addition to her drug counselor and sponsor, she has the support of her aunt and her sister.

## B.     The *Holley* Factors

Again, evidence was presented that all three children wished to return home with their mother. All three children were undergoing individual counseling and were taking medication to stabilize their mood. There was no evidence presented of emotional and physical danger to the children now or in the future. Although the Department expressed concern over appellant's past paramours, it did not appear that she was romantically involved with anyone at the time of trial and acknowledged in therapy that her past relationships had an impact on her children. The Department also expressed concern over appellant's past drug use; however, evidence was presented that appellant had been sober for almost three months at the time of trial, that she was actively participating in substance abuse counseling, and that she had a sponsor who would help her to avoid relapse. There was no evidence indicating that appellant's past drug use interfered with her parenting abilities. Testimony demonstrating that appellant was currently employed and had obtained stable housing for herself and her children was unrefuted. The Department representative acknowledged that appellant completed her service plan, which included a parenting skills course, domestic violence classes, empowerment class, and drug treatment and therapy. Although the children's counselors testified that family therapy would have been beneficial, it was never authorized by the Department. The Department planned to place the children for adoption; there were no plans to place the children with relatives. The children had been at St. PJ's, which Shaw testified was intended to be a temporary placement, for 15 months at the time of trial.

## C.    Other Considerations

Appellant's parental rights were terminated on the grounds that she failed to complete her service plan and that she continued to abuse a controlled substance after completion of a court-ordered substance abuse treatment program. The Department representative, however, testified that appellant did in fact complete all of the tasks required by her service plan. There was evidence that appellant tested positive for drugs during the pendency of the case, but that since engaging in drug counseling with Davila, she had not tested positive and had maintained sobriety for almost three months. *See in re C.H.*, 89 S.W.3d at 28 (evidence proving one or more statutory grounds for termination does not relieve the State of its burden to prove best interest). Curel argued that appellant's long-standing pattern[4] with the Department mandated termination and that the children "need to be liberated from this parent and have the right to move on with their lives." She went on to argue that "closure" would be in the children's best interest.

## D.    Application

Reviewing the record in its entirety, we conclude that the Department failed to meet its burden to establish by clear and convincing evidence that termination of appellant's parental rights is in the children's best interest. Appellant demonstrated that she was willing and able to seek out and accept services, including counseling and drug treatment. She cooperated with the Department by completing all the tasks required by her court-ordered service plan. She also showed that she was willing and able to effect positive changes by securing stable employment and housing. The Department, in contrast, had no plans to seek kinship adoption for the children and had allowed

---

[4] The State devotes a portion of its appellate brief to summarizing appellant's prior referrals as described in Shaw's July 15, 2013 "removing" affidavit which was included in the clerk's record. Shaw, however, did not present testimony about the dates and circumstances of each referral, and the trial court may not take judicial notice of the truth of the allegations in its record. *See In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.). Thus, the allegations contained in Shaw's affidavit cannot support the termination order.

them to remain in a temporary facility for over a year. Curel's testimony that the children have the "possibility" of being adopted was unsubstantiated. Almost every witness testified to the need for and benefit of family therapy, but none was authorized by the Department. The only witness to testify that termination of appellant's parental rights was in the children's best interest was the Department supervisor, Curel. The children's therapists both reserved any opinion on the issue without knowing more about appellant's current status. Davila, the chemical dependency counselor, had no concerns regarding the return of the children to their mother. The children's ad litem urged the trial court to reserve any decision regarding termination until appellant and the children had the opportunity to engage in family therapy. Ultimately, the Department based its plea for termination on the children's need for "closure," but Curel's opinion in that regard was conclusory. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (holding that "conclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence [, a]nd, '[a]lthough [a parent's] behavior may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere.'"). Accordingly, we conclude the evidence presented at trial was insufficient to support the trial court's best interest finding.

## CONCLUSION

Based on the foregoing analysis, we reverse that portion of the trial court's judgment terminating appellant's parental rights and render judgment denying the Department's petition for termination of appellant's parental rights. We affirm that portion of the trial court's judgment terminating the children's father's parental rights. Because appellant's challenge to the Department's Family Code section 153.131 conservatorship was not subsumed within her appeal of the termination order and was not challenged on appeal, we also affirm the trial court's

appointment of the Department as the managing conservator of the children pursuant to section 153.131. TEX. FAM. CODE ANN. § 153.131 (West 2014); *see In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007) (explaining procedure to be followed by a parent, the Department, and the trial court when a judgment terminating parental rights is reversed by the court of appeals but the Department's conservatorship pursuant to section 153.131 is affirmed); *see also In re R.S.D.*, 446 S.W.3d 816, 822-23 n.5 (Tex. App.—San Antonio 2014, no pet.).

Rebeca C. Martinez, Justice